USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/28/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Michelle Adams,

　　　　　　　　Plaintiff,

　　　　　　–v–

Equinox Holdings, Inc., *et al.*,

　　　　　　　　Defendants.

---

19-cv-8461 (AJN)

MEMORANDUM
OPINION AND ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Michelle Adams filed this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101–31.  Ms. Adams alleges that Defendants Equinox Holdings, Inc. ("Equinox"); Elvira Bolotbekova; Joe Matarazzo; Matt Herbert; Wil Diaz; and Alex Songolo discriminated against her on the basis of age.  Currently before the Court is Matarazzo, Herbert, and Diaz's motion to dismiss Plaintiff's Amended Complaint ("Am. Compl."), Dkt. No. 19, under Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 11.

For the following reasons, Matarazzo, Herbert, and Diaz's motion to dismiss as to Plaintiff's claims against them is GRANTED IN PART and DENIED IN PART.

## I.　Background

For the purpose of evaluating this motion to dismiss, all plausible allegations in the amended complaint are accepted as true, and all reasonable inferences are drawn in Plaintiff's favor.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

### A.　Factual Background

1

This action arises out of Plaintiff's employment with Defendant Equinox.  Plaintiff began her employment at Equinox in 1997.  Am. Compl. ¶ 17.  She worked there until September 2010, when she voluntarily resigned.  Am. Compl. ¶ 18.  In October 2010, she met with David Harris and Defendant Matarazzo, both of whom were vice presidents of personal training at Equinox. In that meeting, Matarazzo and Harris requested that Plaintiff return to Equinox; Plaintiff alleges that they offered her an additional $1,000 a month if she agreed to return, and that they told her that she would not have to do any additional work for that raise.  Am. Compl. ¶ 19.  Plaintiff accepted, Am. Compl. ¶ 20, and continued working at Equinox until 2018.  On March 30, 2018, Plaintiff was fired for alleged threatening behavior toward Defendant Bolotbetkova. Am. Compl. ¶ 75.

The facts resulting in Plaintiff's alleged discriminatory treatment are as follows.  Plaintiff alleges that, at least as of November 2010, she was earning less per session in bonus payouts than trainers with less experience and less time with the company.  Am. Compl. ¶ 22.  The alleged disparity continued, and she raised the issue multiple times with Defendant Matarazzo in September 2011.  Am. Compl. ¶ 23-25.  In addition, Plaintiff alleges that in order to receive the additional $1,000 a month that she was promised when she returned to Equinox, she was ordered to take on additional work that would preclude her from retaining new clients.  Am. Compl. ¶ 31. Among other things, Plaintiff alleges that she was ordered to train younger employees who, according to Plaintiff, would subsequently "take her clients."  Am. Compl. ¶ 29.

Plaintiff concedes that Equinox "'partially' cured" the alleged underpayment in 2013. Am. Compl. ¶ 35.  But she alleges that in 2016, Equinox again amended her employment contract to require that she serve as a mentor for new trainers.  Am. Compl. ¶ 44.  She also alleges that her new contract reduced her monthly pay by $300.  Am. Compl. ¶ 44.  And Plaintiff

claims that throughout this time she was consistently undercompensated by Equinox; she alleges that even when Equinox cured the payment disparity, she was not given back pay.  Am. Compl. ¶ 40, 45.  She also claims that Equinox routinely miscalculated her hours of administrative work. Am. Compl. ¶ 46.

Plaintiff separately alleges that her employment at Equinox was plagued by a hostile work environment.  Among other things, she alleges that management was on notice that Plaintiff was receiving fewer clients than similarly situated, but younger, trainers.  Am. Compl. ¶ 84.  She further alleges that management, including Matarazzo, Herbert, and Diaz (collectively, "the Individual Defendants"), failed to rectify the situation after Defendant Bolotbekova made disparaging remarks about the Plaintiff's age—indeed, that they forced her to continue working with Bolotbekova.  Am. Compl. ¶ 73.  And Plaintiff alleges that she suffered retaliation from the Defendants, including the Individual Defendants, after she filed a complaint with the EEOC. Am. Compl. ¶¶ 57-61.

On the basis of these facts, Plaintiff essentially makes three claims against the Individual Defendants.  First, she alleges that the Individual Defendants discriminated against her on the basis of her age.  Am. Compl. at ¶¶ 99–104.  Next, she alleges that the Individual Defendants aided and abetted the discrimination she experienced while employed at Equinox.  Am. Compl. at ¶¶ 105–110.  And finally, she alleges that the Individual Defendants retaliated against her after she filed her age discrimination complaints with the EEOC.  Am. Compl. at ¶¶ 93–98; 111–116.

Case 1:19-cv-08461-JPC   Document 41   Filed 09/28/20   Page 4 of 16


### B.      Procedural Background

In May 2017, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC")

complaint.  Am. Compl. ¶ 57.  The EEOC issued a right-to-sue letter on May 30, 2019.  Am.

Compl. ¶ 14.  According to Plaintiff, she received the letter in early June 2019.  Am. Compl.

¶ 14.

Plaintiff filed her original complaint in state court on August 25, 2019.  see Dkt. No. 2,

Ex. A at 3.  On September 11, 2019, Defendants removed the case to federal court.  Dkt. No. 1.

Defendant Equinox filed its answer to Plaintiff's complaint on October 28, 2019.  Dkt. No. 15.

Also on October 28, 2019, the Individual Defendants filed this motion to dismiss.  Dkt. No. 11.

On October 31, 2019, the Court offered Plaintiff the opportunity to amend her Complaint, Dkt.

No. 16, and Plaintiff filed her amended complaint on December 7, 2019.  Dkt. No. 19.  In

response, the Individual Defendants notified the Court that they would opt to rely on their

originally filed motion to dismiss.  Dkt. No. 20.

## II.      Legal Standard

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint.

*Twombly*, 550 U.S. at 555.  To survive a 12(b)(6) motion, however, a plaintiff must nonetheless

assert "more than labels and conclusions."  *Id.*  Ultimately, the "[f]actual allegations must be

enough to raise a right to relief above the speculative level."  *Id.*  When applying this standard, a

Court must accept the allegations in the complaint as true and draw all reasonable inferences in

the non-movant's favor.  *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007).

## III.     Discussion

### A.     Procedural Hurdles to Plaintiff's ADEA Claims Against the Individual Defendants

The Individual Defendants argue that Plaintiff's ADEA claims against them should be

dismissed because the statutes do not allow for individual liability.  Evaluating these arguments,

the Court concludes that Plaintiff's ADEA claims against the Individual Defendants must be

dismissed.

In her opposition to the motion to dismiss, Plaintiff claims that she never sought to sue

the individual defendants under the ADEA.  Dkt. No. 25, at 2.  But her second claim in the

Amended Complaint is asserted against "the defendants."  Am. Compl. ¶¶ 93–98.  To the extent

that Plaintiff asserted an ADEA claim against the Individual Defendants, and in light of the

Plaintiff's assertion in her opposition to the motion to dismiss, the Court deems this claim

abandoned.

But even if Plaintiff had not abandoned her ADEA claims against the Individual

Defendants, the ADEA claims against them would fail.  As the Individual Defendants argue,

courts in this circuit have long found that the ADEA does not impose liability on individuals.

Dkt. No. 13 at 2; *see Jarvois v. Ferrara*, 2019 WL 2647994, at *3 (S.D.N.Y. August 19, 2019);

*Wang v. Palmisano*, 51 F. Supp. 3d 521, 537 (S.D.N.Y. 2014) (collecting cases); *Sulehria v. New*

*York*, No. 13-CV-6990 (AJN), 2014 WL 4716084, at *4 n.3 (S.D.N.Y. Sept. 19, 2014); *see also*

*Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (summary order) (noting that the ADEA

does not "subject[] individuals, even those with supervisory authority over the plaintiff, to

personal liability").

5

Accordingly, Plaintiff's ADEA claims against the Individual Defendants are DISMISSED.

**B.      Procedural Hurdles to Plaintiff's NYCHRL Claims Against the Individual Defendants**

The Individual Defendants next argue that Plaintiff's NYCHRL claims rely on facts that are time-barred.  Dkt. No. 13 at 3; Dkt. No. 30 at 4.

NYCHRL § 8-502(d) provides that a civil action under the relevant statutory provisions must be commenced "within three years after the alleged unlawful discriminatory practice or act of discriminatory harassment."  Because Adams filed her original complaint on August 25, 2019, the alleged unlawful discriminatory practices or acts of discriminatory harassment must have taken place on or after August 25, 2016.

The only argument that Plaintiff raises in response to Defendant's arguments that the allegations are time-barred is that the continuing violation doctrine "toll[ed]" the statute of limitations.  Dkt. No. 25 at 4.  Under the NYCHRL, "[t]ime-barred discrete acts can be considered timely where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."  *Rogers v. Fashion Inst. of Tech.*, No. 14-CV-6420 (AJN), 2017 WL 1078572, at *10 (S.D.N.Y. Mar. 21, 2017) (citation omitted).  The plaintiff must still show "that part of the violation took place within the limitations period."  *Anyanwu v. City of New York*, 2013 WL 5193990, at *9 (S.D.N.Y. Sept. 16, 2013); *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004).  So the plaintiff must allege both "the existence of an ongoing policy of discrimination" and "some non-time-barred acts taken in furtherance of that policy."  *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (citation omitted).  Only if the plaintiff is able to show that a hostile work environment extended into the limitations period may the Court

consider "the entire time period" of the violation when determining whether liability exists. *Petrosino*, 385 F.2d at 220.

In her opposition to the motion to dismiss, Adams reasserts her claim that the Individual Defendants participated in discriminatory practices that led to her being compensated differently than younger but similarly situated employees, and that they aided and abetted the other Defendants' discriminatory practices. *See* Dkt. No. 25. She claims, for instance, that both before and after August 25, 2016, Defendant Matarazzo "knew of and perpetuated her disparate and worse treatment in terms of her pay rate, sending her business and ignoring her abuse, both verbal and physical at the hands of other employees." Dkt. No. 25 at 3 (citing Am. Compl. ¶ 84). The Court takes Plaintiff to be alleging that Matarazzo, like Plaintiff's other supervisors, knew of and perpetuated the disparate treatment, and that he therefore participated in an ongoing policy of discrimination. Plaintiff's claims against Defendants Herbert and Diaz are similar. In the Amended Complaint, Plaintiff specifically asserts that she emailed Herbert to remind him that she had only 8 active clients and 4 inactive clients. Am. Compl. ¶ 53. She further alleges that Defendants Herbert and Diaz thereafter relayed to her that she would be getting more clients, all while Equinox continued to "steer clients almost exclusively to its younger trainers." Am. Compl. ¶ 54. At least at this stage, the Court construes Plaintiff's allegations liberally; even though Plaintiff does not allege that Herbert and Diaz were *themselves* steering clients toward other trainers, it accepts as true Plaintiff's allegation that they were aware it was happening and did nothing to rectify it. In addition, the Plaintiff alleges several instances that took place after August 25, 2016 where Herbert and Diaz were personally involved in perpetuating a culture of indifference or hostility. *See* Am. Compl. ¶¶ 53–55, 66, 74. Taken together, these claims essentially amount to an argument that though the Individual Defendants were put on notice

about the alleged discrimination prior to August 25, 2016, their failure to take appropriate remedial measures extended past August 2016. Viewing the facts in the light most favorable to the Plaintiff, the Court concludes that the Plaintiff has pleaded some non-time-barred acts to support her argument that the Individual Defendants perpetuated, or aided and abetted, an ongoing policy of discrimination. *See Shomo*, 579 F.3d at 181. And at this juncture, Plaintiff has plausibly alleged that the Individual Defendants' failure to take adequate remedial measures after she raised her concerns to them amounted to a sufficiently pervasive practice as to make application of the continuing violation doctrine proper.

Accepting all of Plaintiff's allegations as true under the Rule 12(b)(6) standard, at this stage that is enough for the Court to conclude that the continuing violation doctrine applies and that the Court may take into account actions that preceded August 25, 2016 when determining the facial plausibility of Plaintiff's claims. In addition, there is no question that Plaintiff can rely on actions that followed August 25, 2016 in asserting her NYCHRL claims against the Defendants.

### C.       Facial Plausibility of Plaintiff's NYCHRL Claims

As described above, Adams asserts three claims under the NYCHRL. First, she alleges that the Defendants discriminated against her on the basis of her age. Am. Compl. at ¶¶ 99–104. Next, she alleges that the Defendants aided and abetted the discrimination she experienced while employed at Equinox. Am. Compl. at ¶¶ 105–110. And finally, she alleges that the Defendants retaliated against her after she filed her age discrimination complaints with the EEOC. Am. Compl. at ¶¶ 111–116. The Court takes each of these in turn.

### 1.       Discrimination Claim (Count 3)

Because the motion to dismiss only relates to the liability of the Individual Defendants, the Court's inquiry is narrower than whether a hostile work environment existed or whether Plaintiff suffered from discrimination or retaliation.  Instead, the question is whether Plaintiff plausibly alleged the Individual Defendants' liability.  Plaintiff presents two theories as to why the Individual Defendants should be held liable for age discrimination. First, she alleges that she was "treated differently and worse than similarly situated employees by all the Defendants due solely to her age."  Am. Compl. ¶ 101.  Second, she alleges that she was terminated due to her age.  Am. Compl. ¶ 102.  As Plaintiff has not alleged that Matarazzo, Herbert, and Diaz played a role in the termination of her employment, *see* Am. Compl. ¶ 75, the Court will focus exclusively on the first theory.

The NYCHRL bars employers from discriminating against employees "in terms, conditions or privileges of employment" on the basis of age.  N.Y.C. Admin. Code § 8-107(1)(a)(3).  As the Second Circuit has explained, "the NYCHRL simplified the discrimination inquiry: the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013).  The NYCHRL goes further than its federal counterparts and covers a broader swath of misconduct; "even a single comment may be actionable in the proper context."  *Id.* at 113.  Still, "at a minimum, employment discrimination claims [under the NYCHRL] must meet the standard of pleading set forth in *Twombly* and *Iqbal*."  *Fattoruso v. Hilton Grand Vacations Co., LLC,* 873 F. Supp. 2d 569, 576 (S.D.N.Y.2012), *aff'd*, 525 F. Appx. 26 (2d Cir. 2013) (summary order) (citation omitted).  Most importantly, "a defendant is not liable" under the NYCHRL "if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives, or if the defendant proves the conduct was nothing more than petty slights or

trivial inconveniences." *Mihalik*, 715 F.3d at 113 (citation omitted); *see also Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 160 (E.D.N.Y. 2015).

The Court first turns to Plaintiff's allegations about Matarazzo.  The bulk of Plaintiff's claims against Matarazzo relate to contractual disputes about the terms of her employment.  *See* Am. Compl. ¶¶ 19–20, 22–26, 32–33, 38–39, 44.  In her opposition to the motion to dismiss, however, Plaintiff specifically links Matarazzo to her claim that supervisors "knew of and perpetuated her disparate and worse treatment."  Dkt. No. 25 at 3 (citing Am. Compl. ¶ 84). Still, Plaintiff does not allege any facts or point to specific allegations that support the theory that Matarazzo acted in any way due to discriminatory intent.

The same holds true for Plaintiff's claims against Herbert.  Plaintiff alleges that Herbert discriminated against her on the basis of her age, but she only makes two factual allegations in support of this theory: first, that Herbert was put on notice in February 2013 and May 2016 that she was not being compensated according to the terms of her employment, and second, that Herbert was put on notice that she had fewer clients than younger colleagues and failed to rectify the situation, despite asserting to her that he would.  Am. Compl. ¶¶ 32, 38, 52–54.  At most, Plaintiff claims that Herbert was indifferent to the hostile work environment she experienced. But she does not present any facts that support that any of Herbert's actions were taken because of the Plaintiff's age.  Indeed, Plaintiff's allegations that Herbert and Diaz acted with discriminatory intent toward her are undercut by the fact that they met with the Plaintiff after her 2016 surgery to "discuss bringing Adam's (sic) business back to full time."  Am Compl. ¶ 52. *C.f. Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000) ("When the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to

hire." (quotation omitted)).  While not dispositive, that fact reinforces the conclusion that the Amended Complaint lacks sufficient facts to establish discrimination.

As to Diaz, Plaintiff relies on several factual allegations that largely track her allegations against Matarazzo and Herbert.  She alleges, for instance, that she emailed Diaz to complain about other employees failing to accurately input her time and about her issues relating to the terms of her employment.  Am. Compl. ¶¶ 36, 38.  She also alleges that Diaz knew that she had fewer clients than younger colleagues and did nothing about it.  Am. Compl. ¶¶ 53–55.  She also alleges that Diaz took no action after "the General Manager's girl friend (sic) threw a barbell at her."  Am. Compl. ¶¶ 60–61.  She further alleges that after she met with Diaz to complain about disparate treatment, Diaz did not rectify the situation.  Am. Compl. ¶ 63.  And she alleges that Diaz took no action after she requested that she not be forced to work with Defendant Bolotbekova, with whom she had had problems in the past.  Am. Compl. ¶ 66.  Yet again, however, Plaintiff does not allege facts that substantiate the claim that Diaz was motivated by discriminatory intent on the basis of Plaintiff's age.  And like with Herbert, Plaintiff's assertion that Diaz sought to bring her back after her surgery cuts in the opposite direction.

Accordingly, because Plaintiff does not plead facts to support the argument that any of the Individual Defendants were motivated at least in part by discriminatory motives, the Individual Defendants' motion to dismiss Plaintiff's NYCHRL discrimination claims against them is GRANTED.

### 2.    Aider-and-Abettor Claim (Count 4)

Plaintiff also asserts that the Individual Defendants aided and abetted the other Defendants in their discrimination against Plaintiff on the basis of her age.  For the following

reasons, the Individual Defendants' motion to dismiss Plaintiff's aiding and abetting claims against them is DENIED.

Individuals can be held liable under the NYCHRL if they "aid, abet, incite, compel, or coerce" unlawful employment discrimination by "actually participat[ing]" in the unlawful conduct. *Holohan v. Newmark & Co. Real Estate, Inc.*, No. 18-CV-6275 (AJN), 2019 WL 4743883, at *5 (S.D.N.Y. Sept. 16, 2019) (citation omitted); *see also* N.Y.C. Admin. Code § 8–107(6). As courts in this district have long noted, aider-and-abettor liability "may extend to supervisors who failed to investigate or take appropriate remedial measures despite being informed about the existence of alleged discriminatory conduct." *Armstrong v. Metro. Transp. Auth.*, No. 07-CV-3561 (DAB), 2015 WL 992737, at *9 (S.D.N.Y. Mar. 3, 2015). *See also Morgan v. NYS Att'y Gen.'s Office*, No. 11-CV-9389 (PKC) (JLC), 2013 WL 491525, at *13 (S.D.N.Y. Feb. 8, 2013) ("[Aider-and-abettor liability] may extend to supervisors who failed to investigate or take appropriate remedial measures despite being informed about the existence of alleged discriminatory conduct."); *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 384 (S.D.N.Y. 1999) (explaining that under the New York State Human Rights Law, which is stricter than the NYCHRL, "a supervisor's failure to take adequate remedial measures can rise to the level of 'actual participation' under HRL § 296(6).").

Plaintiff alleges that she made it known to each of the Individual Defendants that she was experiencing a hostile work environment and that younger, less-experienced trainers were being assigned more clients than she was. She alleges, for instance, that Matarazzo was one of her supervisors at Equinox who "knew of and perpetuated her disparate and worse treatment," despite having been put on notice. Am. Compl. ¶ 84; *see also* Am. Compl. ¶¶ 32, 49. She also specifically mentions that she complained to Herbert and Diaz that she was not being assigned

new clients, and that even after she complained "Equinox continued to steer clients almost

exclusively to its younger trainers." Am. Compl. ¶ 54.  She further alleges that she met with Diaz

in October 2017 to discuss what she perceived to be disparate treatment and that he took no

action to rectify the situation.  Am. Compl. ¶ 63.  And she alleges that all of the Individual

Defendants were put on notice that Defendant Bolotbekova had made hostile remarks about

Plaintiff's age yet took no action, instead keeping "the two working together for no legitimate

reason."  Am. Compl. ¶ 73.  Drawing all reasonable inferences in the Plaintiff's favor, each of

these facts supports the general theory that the Individual Defendants "failed to investigate or

take appropriate remedial measures despite being informed about the existence of alleged

discriminatory conduct."  *Morgan*, 2013 WL 491525, at *13.

At this stage, at least, that is enough for the Court to conclude that the Plaintiff has pled

sufficient facts that, when viewed in the light most favorable to the Plaintiff, state a plausible

aiding-and-abetting claim under the NYCHRL against the Individual Defendants.  Thus, the

Individual Defendants' motion to dismiss Plaintiff's aiding-and-abetting claim against them

under the NYCHRL is DENIED.

### 3.    Retaliation Claim (Count 5)

As a final matter, Plaintiff fails to adequately plead a retaliation claim against the

Individual Defendants under the NYCHRL.  Plaintiff claims that she suffered retaliation after she

filed a claim with the EEOC in two ways.  First, she alleges that she was treated differently and

worse than similarly situated employees after she filed her EEOC claim.  Am. Compl. ¶ 113.

Construed liberally, her Amended Complaint can also be read as claiming that her employment

was terminated in response to her filing a claim with the EEOC.  Am. Compl. ¶ 114.[1]  But since Plaintiff did not allege that Matarazzo, Herbert, and Diaz played a role in the termination of her employment, the fact that she was fired from Equinox does not bear on the narrower question at issue here: Whether the Individual Defendants face any liability for the termination of her employment.  Accordingly, the Court narrows its inquiry only to the first claim.

The NYCHRL prohibits employers from "retaliat[ing] or discriminat[ing] in any manner against any person because such person has ... opposed any practice forbidden under this chapter." N.Y.C. Admin. Code § 8–107(7).  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (citation omitted); *see also E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 838 (S.D.N.Y. 2013).  The NYCHRL covers a broader swath of employer activity than its state and federal counterparts, prohibiting retaliation even if such retaliation does not "result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment."  *Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14-CV-2065 (AJN), 2015 WL 13654007, at *13 (S.D.N.Y. Mar. 26, 2015) (quoting *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010)).  Even then, however, the plaintiff "must still show that her employer was aware she engaged in a protected activity, and that there was a causal connection between the protected activity and the

---

[1] The text of the Amended Complaint only reads that she "was terminated due to her age and replaced by younger employees."  *See* Am. Compl. ¶ 114.  But as this paragraph was also included in the Retaliation section of her claims, the Court construes her to be arguing that she was terminated at least in part due to her filing the EEOC claim.

employer's subsequent action." *Moccio v. Cornell Univ.,* 889 F. Supp. 2d 539, 592 (S.D.N.Y. 2012).

Plaintiff's retaliation claims against the Individual Defendants are not pleaded with sufficient specificity to survive this motion to dismiss.  Most importantly, Plaintiff has alleged no facts that establish "a causal connection between the protected activity and the employer's subsequent action." *Moccio*, 889 F. Supp. 2d at 592.  Plaintiff does not expressly plead any facts addressing Matarazzo's behavior after Plaintiff filed her EEOC claim that support a retaliation theory.  While Plaintiff claims that Matarazzo "knew of and perpetuated her disparate and worse treatment," Am. Compl. ¶ 84, at no point does she allege a causal connection between Matarazzo's alleged actions and her filing of the EEOC claim, let alone any facts to support such a claim.  The same goes for Herbert and Diaz.  In sum, Plaintiff does not plead facts to meaningfully support the claim that the Individual Defendants undertook any action *because of* her filing of the EEOC claim.  Lacking that causal connection, Plaintiff's retaliation claims against the Individual Defendants necessarily fail.

 For these reasons, the Individual Defendants' motion to dismiss Plaintiff's NYCHRL retaliation claims against them is GRANTED.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  The motion to dismiss is granted with respect to (a) Plaintiff's ADEA age discrimination claims against the three Individual Defendants; (b) Plaintiff's NYCHRL discrimination claim against the Individual Defendants; and (c) Plaintiff's NYCHRL retaliation claim against the Individual Defendants.  Accordingly, all such claims are hereby DISMISSED. Because Plaintiff was previously afforded the opportunity to amend her complaint, these claims

are dismissed with prejudice.  On the other hand, the motion to dismiss is denied with respect to Plaintiff's remaining claim: that the Individual Defendants aided and abetted the other Defendants' discrimination against her, in violation of the NYCHRL.

Within one week of this Order, the parties shall submit a joint letter to the Court regarding the status of discovery in this matter.

This resolves Dkt. No. 11.

SO ORDERED.

Dated:  September 28, 2020
        New York, New York

_____
          ALISON J. NATHAN
        United States District Judge