UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                   :

MICHELLE ADAMS,                             :
                                                   :

                        Plaintiff,     :

                                                   :               19 Civ. 8461 (JPC)

          -v-                     :

                                                 :              <u>OPINION AND ORDER</u>

EQUINOX HOLDINGS, INC., *et al.*,     :

                                                 :

                        Defendants.   :

                                                 :
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On March 23, 2018, Michelle Adams, at the time a personal trainer at a fitness club in Manhattan, had an altercation with another trainer while on the job.  Adams threatened her fellow employee, exclaiming:  "I dare you to say it again, bitch.  I dare you and I'll show you what a seventy-year-old can do. I dare you.  I dare you.  I dare you." Not surprisingly, Adams's employer, Equinox Holdings, Inc. ("Equinox"), found this behavior unacceptable for the workplace, and terminated her employment.

Adams brings claims of age-based discrimination and retaliation under federal and New York City law against Equinox and several of her former supervisors and co-workers, challenging her treatment while employed at the club and the circumstances of her termination.  Following the close of discovery, Equinox and several of the individual Defendants who have appeared (the "Moving Defendants") have moved for summary judgment on all of Adams's claims.  That motion is granted in its entirety.  Adams has presented no evidence supporting an inference of age-related motivation for any of Equinox's actions, and additionally Equinox has proffered a legitimate, non-discriminatory reason for her termination:  Adams was fired for violating company policy by threatening a fellow employee in the workplace.  Adams has made no showing that this reason is

pretexual.  Nor has Adams shown any sufficiently severe and pervasive age-related conduct to constitute a hostile work environment.  Adams's federal and city age discrimination and retaliation claims are therefore dismissed.  Lastly, because Adams has failed to present evidence of a primary violation of the New York City anti-discrimination statute, the Court dismisses her aiding and abetting claims as well.

## I.  Background

### A.    Facts[1]

Equinox operates nearly 100 fitness clubs throughout the United States, Canada, and the United Kingdom.  Defts. 56.1 Stmt. ¶ 1.  Adams worked as a personal trainer at Equinox's club at 897 Broadway in New York City (the "Flatiron Club") from 1997 through September 2010 and again from October 2010 until March 30, 2018.  *Id.* ¶¶ 1-2.  Defendant Joseph Matarazzo is the Vice President of Personal Training Operations and Project Management for Equinox and has worked for the company since 1994.  *Id.* ¶ 3.  Defendant Matthew Herbert is Equinox's Vice President of Global People Services and has been with the company since 2000.  *Id.* ¶ 4.  Defendant Will Diaz is a Senior Director of Club Operations for Equinox and was responsible for overseeing the operation of the Flatiron Club at the time of Adams's termination on March 30, 2018.  *Id.* ¶ 5. Defendants Elvira Bolotbekova, who worked as a personal trainer at the Flatiron Club from

---

[1] These facts are mainly drawn from the Moving Defendants' statement of undisputed material facts under Local Civil Rule 56.1(a), Dkt. 86 ("Defts. 56.1 Stmt."), Adams's counter-statement under Rule 56.1(b), Dkt. 96 ("Pl. Counter 56.1 Stmt.") and the exhibits filed by the parties.  Unless otherwise noted, the Court cites only to the Moving Defendants' statement of undisputed material facts when Adams does not dispute the fact, has not offered admissible evidence to refute it, or simply seeks to add her own "spin" on the fact or otherwise dispute the inferences drawn from it.  Additionally, the Court does not consider evidence presented only in the parties' briefing.  "[T]he Second Circuit has been clear that a district court 'is not required to consider what the parties fail to point out in their Local Rule 56.1 statements." *McCall v. Genpak, LLC*, No. 13 Civ. 1947 (KMK), 2015 WL 5730352, at *13 (S.D.N.Y. Sept. 30, 2015) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)); *accord Genova v. Cnty. of Nassau*, 851 F. App'x 241, 244 (2d Cir. 2021) (same).

December 2017 until her own termination on March 30, 2018, *id.* ¶ 7, and Alex Songolo, who Adams alleges was one of her supervisors, Dkt. 19 ("Am. Compl.") ¶ 9, have not appeared in this action. Adams notified the Court on March 2, 2023 that she is no longer proceeding against either Bolotbekova or Songolo because of her failure to timely serve either Defendant. Dkt. 103.

Adams began working at Equinox in June 1997 at the age of forty. Defts. 56.1 Stmt. ¶ 9. She voluntarily resigned from her position in September 2010 at the age of fifty-three. *Id.* ¶ 10. At the encouragement of Matarazzo, Adams returned to working at the Flatiron Club the next month, while still fifty-three years old. *Id.* ¶¶ 2, 11, 14. On October 26, 2010, at the time of her rehiring, Adams signed an agreement with Equinox that provided she would be paid up to an additional $1,000 per month at $52.00 per hour for up to 19 hours of work "teaching/mentoring." *Id.* ¶¶ 12-13; Dkt. 87-11. But Adams insists that she was under the impression that the hours could come from "administrative duties" and that Matarazzo told her that she would "not have to do any more work" in order to receive the $1,000. Pl. Counter 56.1 Stmt. ¶¶ 12-13; Dkt. 97-8 ("Pl. Dep.") at 104:2-106:24. This agreement meant that Adams made more money overall than other trainers at her level. Defts. 56.1 Stmt. ¶ 16; Pl. Counter 56.1 Stmt. ¶ 16; *see also* Dkt. 87-3 at 144-45.

In May 2013 and May 2016 Adams signed two additional agreements to mentor less experienced trainers at the Flatiron Club in exchange for compensation. Defts. 56.1 Stmt. ¶ 15; Dkts. 87-12, 87-13. There is some dispute between the parties as to whether Adams was fully and promptly paid under these agreements. Defts. 56.1 Stmt. ¶¶ 16-18; Pl. Counter 56.1 Stmt. ¶¶ 16-18.

Equinox's trainers are organized based on experience into tier levels including Tier 1, Tier 2, Tier 3, and Tier 3+ trainers. Defts. 56.1 Stmt. ¶ 19; Dkt. 87-3 at 35:4-7. Adams was promoted to Tier 3+ in 2010, and was one of the first trainers at the Flatiron Club to be promoted to that level. Defts. 56.1 Stmt. ¶¶ 20-21. Trainers at the Flatiron Club were paid a "session rate" for each

personal training session they performed during the pay period, with that rate based on the trainer's tier level and the number of training sessions they performed during any given pay period.  *Id.* ¶¶ 22-23.  Higher tiered trainers generally received a higher session rate than lower tiered trainers, though for a period Adams was paid by "mistake" less than her appropriate tier rate until she asked for the rate to be corrected.  *Id.* ¶ 24; Pl. Dep. at 132:9-17; 133:3-20.[2]  From 2014 to 2018, Adams was paid between $64.50 and $69.50, $19 to $24 more per session than any other Tier 3+ personal trainer.  Defts. 56.1 Stmt. ¶¶ 25-26.  Adams trained twenty different members at the Flatiron Club in the six months before March 2018.  *Id.* ¶ 77.  Only seven of these members continued to train at the club following Adams's termination.  *Id.* ¶ 78.  Those seven members then trained with six different trainers whose ages ranged from twenty-two to forty-three years old.  *Id.* ¶ 79.

Trainers at Equinox could increase their compensation and grow their personal training business by selling their services to prospective clients, known as "leads."  *Id.* ¶ 27.  Trainers could generate their own leads through speaking with current or prospective clients or by organizing and hosting special events at the Flatiron Club.  *Id.* ¶¶ 28-29.  Equinox also provided leads to trainers.  *Id.* ¶ 30.  Generally, Equinox would provide more leads to newer and lower tiered trainers in order to help them ramp-up their personal training business, and correspondingly fewer leads to higher tiered trainers who were "better equipped to generate and maintain their own business."  *Id.* ¶¶ 31-32.  Equinox also provided leads to trainers based on the specific preferences of the clients.  *Id.* ¶ 33.  Adams was able to generate her own leads through this process, at times turned down leads

---

[2] When asked about this pay difference at her deposition, Adams acknowledged that it was a mistake and not discriminatory:

> Q.     Are you alleging that this difference in pay rate was somehow discriminatory on the part of Equinox or was it a mistake?

> A.     It was a mistake.

Pl. Dep. at 133:21-25.

provided by Equinox, and in 2017 was provided with more leads than any other Tier 3+ trainer at Equinox, each of whom was younger than Adams.[3]  *Id.* ¶¶ 34-36.

On March 23, 2018, Adams was involved in an incident at the Flatiron Club with Bolotbekova, another personal trainer at the club.  *Id.* ¶ 39.  Equinox employees including Michelle Goldberg, Robert Morales, and Ryan Miller witnessed the incident.  *Id.* ¶ 40.  In an email to Diaz, a Senior Director of Club Operations, that was sent the day of the incident, Goldberg described what happened:

> I walked into a heated situation between [Adams] and Elvira Bolotbekova at 7:25 AM today.  I have statements from Elvira, Ryan Miller and Rob Morales.  Ryan and Rob were in the break-room for the entirety of the situation.  I walked in right at the moment where it escalated.  I overheard and saw [Adams] standing aggressively towards Elvira who was sitting with her back towards [Adams], "I will show you what a 70 year old woman can do Bitch."  "You keep going, bitch."  I removed Elvira from the room immediately.  We need someone to talk to [Adams] today.

*Id.* ¶ 41.  Diaz forwarded that email to Stephanie Herrmann, Equinox's Senior Director of People Services, *id.* ¶ 6, who also received witness statements from Morales and Miller.  *Id.* ¶¶ 42-43.  Adams sent Herrmann a statement a few days later.  *Id.* ¶ 46.

Morales's statement said:  "Elvira stopped in for H2O, asked how to build business?  'How did you do it?'  Quantity over quality.  Michelle [*i.e.*, Adams] came in, Rob told [Elvira] to ask Michelle.  Michelle 'she don't want to learn from . . . she wants nothing to do with me.'  'You're talking to me in a tone.'  'It's 7am, don't talk to me like my mother.'  Called Elvira a 'bitch' twice.  Michelle walked in (manager)."  *Id.* ¶ 44 (alterations in original).  Miller similarly wrote:  "In breakroom, entered room to Rob/Elvira talking.  Michelle A raised voice.  'Called her a b –' don't

---

[3] Adams denies that she received more leads than other Tier 3+ trainers, citing to emails she sent in 2017 asking management for more leads.  Pl. Counter 56.1 Stmt. ¶ 36.  But those emails do not contradict the fact that Adams received more leads than other trainers of her level, they only show Adams seeking more leads and complaining that she was not receiving as many leads as "new trainers who are just starting their Personal Training businesses."  Dkt. 97-6 at 2-3.

talk to me like that.  Michelle came in.  'Elvira disrespected her in front of Alex.'  Elvira was calm, 'relaxed.'  Michelle propped up."  *Id.* ¶ 45.

In her statement, Adams acknowledged the threatening confrontation with Bolotbekova. Adams wrote, "I stood up and said 'I dare you to say it again, B****, I dare you, and I'll show you what a 70 year old can do.  I dare you, I dare you, I dare you' . . . .  Robert [Morales] was stunned by my outburst and had grabbed Elvira [Bolotbekova] and pulled her away as if I was going to hit her."  *Id.* ¶ 47 (first alteration in original).

Herrmann and Diaz concluded based on these statements that Adams had "violated company policy by threatening Ms. Bolotbekova in the workplace."  *Id.* ¶ 48.  They further determined that Adams would be terminated, which took effect on March 30, 2018.  *Id.* ¶¶ 49-50, 53.[4]  Bolotbekova also was terminated on that date for violating company policy by "making certain age-based comments to plaintiff on March 15, 2018 and March 23, 2018."  *Id.* ¶¶ 51-52. The Moving Defendants state that "Plaintiff admits that Equinox's decision to terminate her employment was not discriminatory."  *Id.* ¶ 54.  Adams responds that she "admits in part and denies in part.  While the incident with Ms. Bolotbekova caused Ms. Adams to act disorderly, her termination was the result of many years of mistreatment on behalf of Equinox and [its] employees towards Ms. Adams."  Pl. Counter 56.1 Stmt. ¶ 54.  In support of this assertion, Adams cites only to a single email to Songolo discussing her difficulty working with Bolotbekova because Bolotbekova was "continually rude, disrespectful and uncooperative," *id.*; *see* Dkt. 97-4, which she claims she sent on March 17, 2018, Dkt. 98 ¶ 34.

---

[4] Adams "notes that their decision" to terminate her "was built up [from] a budding desire to rid Ms. Adams from the Equinox establishment," but cites no evidence to support this claim. Pl. Counter 56.1 Stmt. ¶ 49.

On multiple other occasions, Equinox has fired employees for violating company policy by engaging in aggressive or threatening conduct.  Defts. 56.1 Stmt. ¶ 55.  These employees ranged in age from twenty-three to fifty-nine.  *Id.*

## B.    Procedural History

On November 24, 2017, Adams filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and a hostile work environment on the basis of race and age, which Equinox opposed after conducting an investigation.  *Id.* ¶¶ 37-38.  Adams filed an amended charge on April 28, 2018 alleging discrimination, retaliation, and a hostile work environment on the basis of her gender, race, and age.  *Id.* ¶ 56.  Equinox opposed that charge and on May 30, 2019, after a full investigation, the EEOC issued a "no cause" finding and dismissed both the original and amended charge.  *Id.* ¶¶ 57-58.

Adams filed the Complaint that initiated this action on August 25, 2019 in the Supreme Court of the State of New York, New York County.  Dkt. 1 at 1.  Equinox removed the action to federal court in this District on September 11, 2019.  *Id.* at 3.  The docket reflects that Defendants Bolotbekova and Songolo were never served.  *See* Dkt. 103.  Matarazzo, Herbert, and Diaz then moved to dismiss this case on October 28, 2019.  Dkts. 11-13.  Adams filed an Amended Complaint on December 7, 2019, bringing claims for age discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (the "ADEA"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* (the "NYCHRL"), as well as claims for aiding and abetting discrimination under the NYCHRL.  Am. Compl. ¶¶ 87-116.  Matarazzo, Herbert, and Diaz opted to rely on their originally filed motion to dismiss.  Dkt. 20.  On September 28, 2020, the Honorable Alison J. Nathan, to whom this case was then assigned, granted in part and denied in part that motion, dismissing each of Adams's claims against those

Defendants with the exception of the claim for aiding and abetting discrimination in violation of the NYCHRL.  Dkt. 41 at 15-16.  The case was transferred to the undersigned on September 29, 2020.  *See* Sept. 29, 2020 Notice of Case Reassignment; *see also* Dkt. 42.

After the completion of discovery, the Moving Defendants moved for summary judgment on the remaining causes of action in the Amended Complaint on May 6, 2022.  Dkts. 85-88, 89 ("Motion").  Adams opposed the motion on July 1, 2022.  Dkts. 95 ("Opposition"), 96-98.  The Moving Defendants filed a reply on July 28, 2022.  Dkts. 99-101.

## II.  Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On a motion for summary judgment, the moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  "If the moving party meets its initial burden, the nonmoving party must then 'set forth specific facts showing that there is a genuine issue for trial' using affidavits or other evidence in the record, and cannot rely on the 'mere allegations or denials' contained in the pleadings."  *Taylor v. City of New York*, No. 19 Civ. 6754 (KPF), 2022 WL 744037, at *6 (S.D.N.Y. Mar. 11, 2022) (quoting

*Anderson*, 477 U.S. at 248); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("[A] nonmoving part[y] . . . may not rely on conclusory allegations or unsubstantiated speculation . . . [and] must offer some hard evidence showing that its version of the events is not wholly fanciful." (internal quotation marks omitted)).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). At the same time, however, "in considering what may reasonably be inferred from witness testimony, the court should not accord the nonmoving party the benefit of unreasonable inferences, or inferences at war with undisputed facts." *Taylor*, 2022 WL 744037, at *7 (internal quotation marks omitted).

## III. Discussion

### A. Statute of Limitations

"Before a plaintiff may assert claims under . . . the ADEA in federal court, she must present the claims forming the basis of such a suit in a complaint to the EEOC." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) (citing *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006)). A claim under that statute is time-barred if the plaintiff does not file a charge with the EEOC within 300 days of the alleged unlawful employment practice. *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 112 (2d Cir. 2008); *see* 29 U.S.C. § 626(d)(1). "Where the plaintiff complains of discrete discriminatory or retaliatory acts such as 'termination, failure to promote, denial of transfer, or refusal to hire,' such claims are not actionable if they occurred prior to the 300-day period even though they may be 'related to' acts that occurred within the permissible 300-day period." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14

(2002)).  However, "a charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and *at least one act falls within the time period.*"  *Id.* (emphasis and alteration in original) (brackets omitted) (quoting *Morgan*, 536 U.S. at 122).  Moreover, even time-barred actions may be considered as background evidence for other claims.  *See id.* ("[E]xpiration of the limitations period does not bar an employee from using the prior acts as background evidence in support of a timely claim." (internal quotation marks omitted)).

Adams brought her first EEOC charge for claims including age discrimination on November 24, 2017.  Defts. 56.1 Stmt. ¶ 37; Pl. Counter 56.1 Stmt. ¶ 37.  Therefore, any ADEA claims which accrued prior to January 28, 2017 are time-barred.

Claims brought under the NYCHRL are subject to a three-year statute of limitation.  *See Ctr. for Indep. of Disabled v. Metro. Transp. Auth.*, 125 N.Y.S.3d 697, 702 (App. Div. 2020).  However, NYCHRL claims are tolled by the filing of a charge with the EEOC, extending Adams's time to file such claims by the 552 days during which her charges were pending with the EEOC, *see* Defts. 56.1 Stmt. ¶¶ 37, 58, to February 19, 2015, the date three years and 552 days before Adams filed suit in New York state court on August 25, 2019.  *See Espinosa v. Weill Cornell Med. Coll.*, No. 18 Civ. 11665 (AT), 2021 WL 1062592, at *4 (S.D.N.Y. Mar. 19, 2021) ("Although the Second Circuit has not yet resolved the question of whether an EEOC charge tolls the statute of limitations for . . . NYCHRL claims, many courts in this district have concluded that it does.").

## B.    Discrimination Claims

ADEA claims of workplace discrimination are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *See Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 106 (2d Cir. 2010).  To succeed under this framework, "a plaintiff must first demonstrate a *prima facie* case of employment discrimination by showing that:

'(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)). "[O]nce a plaintiff produces minimal evidentiary support for the claim of discriminatory motivation, the burden of production shifts to the employer to articulate a non-discriminatory reason for the adverse employment action." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). "When the employer meets its burden, the plaintiff can no longer rely on the prima facie case, but must prove that the employer's proffered reason was a pretext for discrimination" which a plaintiff can do in the ADEA context "by presenting facts which taken in [her] favor suffice to show that a triable issue exists as to whether [her] age was a 'but for' cause of [her] termination." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (internal quotation marks, brackets, and ellipsis omitted).

Additionally, the NYCHRL makes it "an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code. § 8-107(1). "Courts must analyze NYCHRL claims separately from any federal law claims and should construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Bueno v. Eurostars Hotel Co., S.L.*, No. 21 Civ. 535 (JGK), 2022 WL 95026, at *8 (S.D.N.Y. Jan. 10, 2022) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)). To show discrimination or a hostile work environment under the NYCHRL, a plaintiff need only show that she was "treated . . . less well, at least in part for a discriminatory reason.'"[5] *Khwaja v. Jobs to*

---

[5] As noted *infra* at footnote 11, hostile work environment and discrimination claims under

*Move Am.*, No. 19 Civ. 7070 (JPC), 2021 WL 3911290, at *3 (S.D.N.Y. Sept. 1, 2021) (quoting *Mihalik*, 715 F.3d at 110 n.8 ); *see also Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 337 (S.D.N.Y. 2021) ("[Plaintiff] brings claims under the NYCHRL for disparate compensation, denial of promotions, and what she frames as a hostile work environment.  For each of those claims she must show that she was treated 'less well' on the basis of her [protected characteristic] due to Defendant's discriminatory intent.").  The severity and pervasiveness of the defendant's conduct is "relevant only to the issue of damages" and "the challenged conduct need not even be 'tangible (like hiring or firing).'"  *Mihalik*, 715 F.3d at 110 (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (App. Div. 2009) and quoting *id.* at 40).  It is sufficient to show "differential treatment of any degree based on a discriminatory motive."  *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014).

Adams's age-based discrimination claims under the ADEA and the NYCHRL fail for the same reason:  Adams has presented no evidence to the Court raising even a minimal inference of age-motivated conduct.  This absence of evidence of treatment for a discriminatory reason extends to Adams's termination, as well as her participation in the Equinox mentoring program, the generation of leads, and pay rates.  Simply put, she points to no evidence Equinox was motivated to any extent by a discriminatory purpose.

With respect to her termination, Adams argues that the evidence that her clients who remained at Equinox following her termination began personal training with younger trainers raises an inference of age discrimination.  Opposition at 12.  But this evidence does not show that Adams was terminated so that younger trainers could replace her; rather, it shows that a portion of her personal training clients, less than half of the total, was divvied up among six younger trainers who were *already on Equinox's staff*.  *See* Dkts. 97-17, 100 at 2.  In other words, there is no

---

the NYCHRL are identically analyzed.

evidence that Equinox hired or promoted another, younger, employee to replace Adams.  Simply distributing the duties of a departing employee among other current employees does not raise an inference of discrimination.  *See Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 505 (S.D.N.Y. 2012) ("It is true that, where an ADEA-covered employee is replaced by a younger worker, that is generally sufficient to infer discrimination and make out a *prima facie* case.  Here, however, [the plaintiff] has not come forward with evidence that he was in fact replaced.  Although his work may have been divvied up among the remaining [employees of the defendant], all of whom were, as a matter of fact, younger, [the plaintiff] has presented no evidence that anyone else, younger or older, was hired or promoted to fill his spot.  This unexceptional circumstance is insufficient to create an inference of discrimination." (citations omitted)), *aff'd*, 766 F.3d 163 (2d Cir. 2014).  Otherwise, any time an employer terminates an employee, the employer would be forced to either hire an older replacement, leave the employee's former work undone, or spread that work among only those retained staff members older than the employee to avoid raising an inference of discriminatory intent.

Adams's ADEA claim relating to her termination additionally fails because, in the face of this complete absence of any discriminatory motivation for her termination, Equinox presents a compelling, non-discriminatory reason for her termination:  Adams was fired because she violated Equinox policy by engaging in threatening behavior at the workplace towards another employee. *See, e.g.*, Motion at 10-12.  And Adams has come forward with no evidence to suggest that reason is pretextual.

To the extent Adams brings claims based on alleged disparate treatment with respect to Equinox's trainer mentoring process, distribution of leads, or pay, those claims also fail.  Even assuming that the evidence presented to the Court reveals an adverse employment action or differential treatment, Adams has presented zero evidence indicating that Equinox's actions with

respect to the contracts in which she agreed to receive additional pay for mentoring other trainers, her lead generation, or her pay had anything to do with her age. The undisputed evidence shows that Adams signed agreements in 2010, 2013, and 2016 under which she could mentor younger trainers for additional compensation, Pl. Counter 56.1 Stmt. ¶¶ 12-13, 15, that Adams was paid more per hour than any other trainer in her level from 2014 to 2018, Defts. 56.1 Stmt. ¶¶ 25-26, that lower tiered trainers received more leads than higher tiered trainers to allow those lower tiered trainers to build up their portfolios, *id.* ¶¶ 31-32, and that Adams received more leads in 2017 than other trainers at her level, each of whom was younger than she, Pl. Counter 56.1 Stmt. ¶ 36; Dkt. 97-6 at 2-3. While Adams disputes that she was correctly compensated under her mentoring agreements, Pl. Counter 56.1 Stmt. ¶¶ 16-18, and sought to receive the same number of leads as newer trainers, Dkt. 97-6 at 2-3, nothing in the evidence presented to the Court indicates that any pay discrepancies or differences in the way Equinox handled leads was motivated by Adams's age.

The most that Adams can point to are comments by Bolotbekova in March 2018 "based on [Adams's] age." Dkt. 98 ¶ 24. But Adams has presented no evidence of the content of those comments,[6] and under neither the ADEA nor the NYCHRL would they be sufficient to show discrimination.[7] Under the ADEA, "stray remarks, even if made by a decision maker,[8] do not constitute sufficient evidence [to support] a case of employment discrimination." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998); *see also Lively v. WAFRA Inv. Advisory Grp.,*

---

[6] In her Amended Complaint, Adams alleges that Bolotbekova told her on March 15, 2018, "stop yelling at me like you are my mom, you are older than her" and on March 23, 2018 said, "it[']s almost 7:30 and some people are already angry and yeah and you are almost 70." Am. Compl. ¶¶ 68, 72. The Court of course cannot rely on mere allegations in a complaint at the summary judgment stage, but even if these allegations were true, they would at most amount to stray comments that cannot support a claim of discrimination under the ADEA.

[7] Nor are Bolotbekova's comments sufficient to establish a hostile work environment, as the Court discusses *infra* at III.C.

[8] There is no evidence establishing that Bolotbekova, as a fellow personal trainer, was a "decision maker."

*Inc.*, 6 F.4th 293, 307 (2d Cir. 2021) (applying *Danzer* in the ADEA context).   Under the NYCHRL, an employer cannot be held liable for the alleged discriminatory acts of a non-supervisory employee unless the employer "knew of" the conduct and "acquiesced in such conduct or failed to take immediate and appropriate corrective action" or "should have known of [the] conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct." *Torres v. City of New York*, No. 18 Civ. 3644 (LGS), 2019 WL 1765223, at *5 (S.D.N.Y. Apr. 22, 2019) (quoting N.Y.C. Admin. Code § 8-107(13)(b)).   But here, Equinox management investigated the incident and terminated Bolotbekova based on her age-related comments to Adams on March 30, 2018, just shortly after Bolotbekova made those comments on March 15, 2018 and March 23, 2018.   Defts. 56.1 Stmt. ¶¶ 41-52; Dkt. 88 ("Herrmann Declaration") ¶ 9; *id.* Exh. 4.   Indeed, the evidence presented demonstrates Herrmann and Diaz only learned of those comments upon looking into the March 23, 2018 incident.   Herrmann Declaration ¶ 9.   Adams has produced no evidence that Bolotbekova made age-related comments to her prior to March 15, 2018, let alone that Equinox management was aware of any such comment, yet failed to take action.[9]   Nor has Adams provided evidence indicating that Bolotbekova took any other age-related action after Equinox learned of these comments.

Accordingly, Adams has failed to present evidence to adequately support her claims of age discrimination in connection with her termination by Equinox or with her treatment while employed at the Flatiron Club.   The Court therefore grants the Moving Defendants' motion for summary judgment in this regard, and dismisses her discrimination claims under the ADEA and the NYCHRL.

---

[9] Adams points to the email that she sent to Songolo, in which she wrote that Bolotbekova was "rude, disrespectful and uncooperative," but that email presents no indication of any age-related conduct by Bolotbekova of which Equinox should have been aware.   Dkt. 97-4.

C.    **Hostile Work Environment Claim**[10]

To prevail on a federal hostile work environment claim,[11] a plaintiff must show conduct that "(1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's" protected characteristic. *Everett v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 7043 (JPC), 2022 WL 2342693, at *7 (S.D.N.Y. June 29, 2022) (ellipsis in original) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)); *see also Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (applying this standard at summary judgment to ADEA claim).

"A hostile work environment is created '[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Moore v. DeJoy*, No. 18 Civ. 9967 (JPC), 2021 WL 4523503, at *5 (S.D.N.Y. Sept. 30, 2021) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). To determine whether an environment is "hostile" or "abusive," a court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The hostile work environment may result from "a single incident [that] was extraordinarily severe, or . . . a series of

_____

[10] While the Amended Complaint does not explicitly bring a hostile work environment claim, *see generally* Am. Compl., the parties' briefing treats such a claim as live, Motion at 12; Opposition at 5, 9, 15, so the Court addresses it here.

[11] The standard for a claim for a hostile work environment under the NYCHRL does not differ from the standard for a claim of discrimination. *See Verne v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 5427 (JPC), 2022 WL 4626533, at *17 (S.D.N.Y. Sept. 30, 2022). Therefore, because the Court grants the motion for summary judgment as to Adams's NYCHRL discrimination claims, *see supra* III.B, it grants the motion as well for any city hostile work environment claims because of Adams's failure to identify any age-based motive on the part of Equinox.

incidents [that] were sufficiently continuous and concerted to have altered the conditions of [the

plaintiff's] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal

quotation marks omitted).  But "[i]solated incidents or 'episodic' stray remarks are not 'sufficiently

continuous and concerted in order to be deemed pervasive.'"  *De Figueroa v. New York*, 403 F.

Supp. 3d 133, 160-61 (E.D.N.Y. 2019) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir.

2003)).

Any hostile work environment claim under the ADEA fails for the same reason as Adams's

discrimination claims:  she has presented no evidence to the Court indicating that any action of

Equinox's was taken for an age-related reason.  She points only to the two comments made by

Bolotbekova on March 15, 2018 and March 23, 2018, which are insufficient to survive summary

judgment.  As a threshold matter, Adams has failed to come forward with any evidence to establish

Equinox's liability for Bolotbekova's comments.  A plaintiff bringing claims for a hostile work

environment must "show that a specific basis exists for imputing the conduct that created the

hostile environment to the employer."  *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir.

2000) (internal quotation marks omitted).  "When the source of the alleged harassment is a co-

worker, the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for

complaint or if it knew, or in the exercise of reasonable care should have known, about the

harassment[, the employer] failed to take appropriate remedial action."  *Id.* (internal quotation

marks omitted).[12]  By the end of March 2018, Equinox of course had investigated and fired

---

[12] The standard under the NYCHRL for non-supervisory employees is that an employer is liable when it "knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action." N.Y.C. Admin. Code § 8-107(13)(b)(2).  Furthermore, "an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility" or "[t]he employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct." *Id.* § 8-107(13)(b)(2)-(3).  Because Adams fails to present evidence that Equinox or any supervisor there knew or should have known of any age-related

Bolotbekova for "making certain age-based comments to plaintiff on March 15, 2018 and March 23, 2018." Defts. 56.1 Stmt. ¶¶ 41-52. And Adams does not present evidence that she made any complaints to Equinox that Bolotbekova was subjecting her to a hostile work environment based on her age prior the management looking into the March 23, 2018 incident.[13]

Furthermore, Adams has failed to properly present evidence to the Court of the content of these two statements. *See supra* note 6.[14] Without more, there is no evidence indicating that these comments were "extraordinarily severe," and two comments alone are not "sufficiently continuous and concerted in order to be deemed pervasive." *De Figueroa*, 403 F. Supp. 3d at 161; *see Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that "the ordinary tribulations of the workplace, such as the sporadic use of abusive language" do not rise to the level constituting a hostile work environment because civil rights laws do not enact "a general civility code" (internal quotation marks omitted)); *Brennan*, 192 F.3d at 318 ("Isolated, minor acts or occasional episodes do not warrant relief."); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (holding that "despicable and offensive" "racist remarks" made "on occasion" by a supervisor "fail to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile environment"); *McGrath v. Thompson Reuters*, No. 10 Civ. 4944 (JSR) (JCF), 2012 WL 2119112, at *15 (S.D.N.Y. Apr. 30, 2012) ("[T]wo stray comments are not sufficiently severe or pervasive

---

conduct of Bolotbekova prior to the investigation into the March 23, 2018 incident, or that Equinox management failed to take immediate and appropriate corrective action, a city hostile work environment claim would not survive under the NYCHRL standard.

[13] As noted, *see supra* fn. 9, Adams's email to Songolo regarding Bolotbekova's conduct is not sufficient because that email contained no information indicating that Bolotbekova took any action due to Adams's age. *See* Pl. Counter 56.1 Stmt. ¶ 54; Dkt. 97-4. It says only that Bolotbekova had been "continually rude, disrespectful, and uncooperative" towards Adams for the preceding week. Dkt. 97-4.

[14] Here too, even if the substance of these statements as alleged in the Amended Complaint were credited, Bolotbekova's conduct would not be so "extraordinarily severe" as to create a hostile work environment.

to create a hostile work environment."), *report and recommendation adopted by* 2012 WL 2122325 (S.D.N.Y. June 12, 2012), *aff'd*, 537 F. App'x 1 (2d Cir. 2013). Bolotbekova's comments alone are therefore not enough to constitute a hostile work environment, and the Court grants the Moving Defendants' motion for summary judgment with respect to Adams's hostile work environment claims.

### D.    Retaliation Claims

To make out a *prima facie* case of retaliation under the ADEA, a plaintiff must show "that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012); *see Massaro v. NYC Dep't of Educ.*, No. 21-266-cv, 2022 WL 1788203, at *1 (2d Cir. June 2, 2022) (applying this approach to ADEA claims).  The plaintiff's burden of proof as to this first step "has been characterized as minimal and *de minimis*."  *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks omitted).  Should she make out her *prima facie* case, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action."  *Id.* at 845.  Finally, "after the defendant has articulated a non-retaliatory reason for the employment action . . . [, t]he plaintiff must then come forward with [evidence that the] non-retaliatory reason is a mere pretext for retaliation."  *Id.*

"To make out an unlawful retaliation claim under the NYCHRL, a plaintiff must show that (1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct."  *Bilitch v. N.Y.C. Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 246 (App. Div. 2021)

(brackets omitted).   "To establish its entitlement to summary judgment in a retaliation case under . . . the NYCHRL, a defendant must demonstrate that the plaintiff cannot make out a prima facie claim of retaliation or, having offered legitimate, nonretaliatory reasons for the challenged actions, that there exists no triable issue of fact as to whether the defendant's explanations were pretextual." *Id.* (brackets omitted).   "Where a defendant produces evidence that justifies his or her allegedly retaliatory conduct on permissible grounds the plaintiff must either counter the defendant's evidence by producing evidence that the reasons put forth by the defendant were merely a pretext, or show that, regardless of any legitimate motivations the defendant may have had, the defendant was motivated at least in part by an impermissible motive." *Id.* (brackets, ellipsis, and internal quotation marks omitted); *see also Cardwell v. Davis Polk & Wardwell LLP*, No. 19 Civ. 10256 (GHW), 2023 WL 2049800, at *25 (S.D.N.Y. Feb. 16, 2023) ("[I]f the plaintiff can establish his *prima facie* case under the NYCHRL, the Court proceeds by analyzing whether the defendants have articulated a legitimate, non-discriminatory [reason] for the allegedly retaliatory action and then, if so, by passing the burden back to the plaintiff to point to evidence showing that the employer's stated reasons are pretextual.").

Here, Adams's claims of retaliation under both the ADEA and the NYCHRL fail.  While Adams engaged in protected activity by filing her EEOC charge in November 2017, and the Moving Defendants do not dispute either that they knew of this charge or that termination would count as the type of conduct likely to deter a person from engaging in protected activity, Adams points only to the temporal proximity between the charge and her termination as proof of a causal connection.  But because the Moving Defendants have presented evidence that Equinox's decision to terminate her was for the non-retaliatory purpose of ensuring compliance with workplace anti-threat policies, such temporal proximity is insufficient to survive summary judgment.  *See Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 802 (S.D.N.Y. 2020) ("[E]ven under the more relaxed

NYCHRL standard, when Plaintiff's sole evidence of pretext is the temporal proximity between Plaintiff's complaints and Defendants' discipline, a NYCHRL retaliation claim cannot survive summary judgment if the employer has shown a non-retaliatory reason for the plaintiff's mistreatment." (internal quotation marks omitted)); *Watkins v. N.Y.C. Transit Auth.*, No. 16 Civ. 4161 (LGS), 2018 WL 895624, at *9 (S.D.N.Y. Feb. 13, 2018).   And again, Adams has not presented a scintilla of evidence suggesting that this stated reason for her termination is a pretext. Therefore, the Court grants the Moving Defendants' motion for summary judgment with respect to Adams's retaliation claims.

### E.     Aiding and Abetting Claims

Because the Court grants summary judgment dismissing each of Adams's NYCHRL claims, it also grants summary judgment with respect to Adams's aiding and abetting claims.  *See Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 393 (S.D.N.Y. 2014) ("[A]iding and abetting is only a viable theory where an underlying violation has taken place." (internal quotation marks omitted)).

### F.     Failure to Serve Bolotbekova and Songolo

On February 28, 2023, the Court issued an order requiring Adams to file a letter indicating whether Bolotbekova and Songolo ever had been served in this action.  Dkt. 102.  Adams informed the Court that neither had been served because "despite plaintiff's good faith efforts plaintiff was unable to find and serve Bolotbekova or Songolo" "in no small part due to the COVID-19 Pandemic," that she was not seeking an extension of time to serve, and that she would proceed as to the other Defendants only.  Dkt. 103.

Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant has not been served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be

made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  "To establish good cause, a plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control."  *Deptula v. Rosen*, 558 F. Supp. 3d 73, 85 (S.D.N.Y. 2021) (internal quotation marks omitted).

The Court determines that Adams has not shown good cause for her failure to serve.  In particular, the Court does not see how COVID-19 could have prevented Adams from effecting service in late 2019.  The Court therefore dismisses this action without prejudice as to Bolotbekova and Songolo pursuant to Rule 4(m).

## IV.  Conclusion

For the foregoing reasons, the Moving Defendants' motion for summary judgment is granted in full.  The Clerk of Court is respectfully directed to close the motion pending at Docket Number 85, terminate Bolotbekova and Songolo from this action, enter judgment, and close this case.

SO ORDERED.

Dated: March 17, 2023
       New York, New York

_____
JOHN P. CRONAN
United States District Judge

22